UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**DEBORAH LAUFER**
        **Plaintiff,**

**v.**                                       **Case No: 1:21-cv-313**

**VRINDAVIN CORPORATION,**
        **Defendant.**

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF STANDING**

Plaintiff, by and through undersigned counsel, hereby submits this Memorandum In Support of Standing.

**I.      Introduction**

As alleged in the Plaintiff's original Complaint, Plaintiff is a disabled person within the meaning of the Americans With Disabilities Act, 42 U.S.C. Sections 12181, et seq. ("ADA"). Plaintiff is a resident of Florida. Defendant provides the public with booking services for its hotel through an online reservations system. (Hereinafter "websites", "online reservations systems" or "ORS".) The purpose of this ORS is so that Defendant can reach out and market to persons all over the country and in their own homes to solicit their patronage, provide them with information so that they can make a meaningful choice in planning trips, and, in some instances, book a room at the hotel. As such, the Defendant's ORS is required to comply with the requirements of 28 C.F.R. Section 36.302(e)(1)(hereinafter "Regulation"), by identifying and allowing for booking of accessible rooms and providing accurate and sufficient information as to whether all the features at the hotel are accessible. Prior to the filing of this lawsuit, Plaintiff reviewed

Defendant ORS and found that it did not comply with the Regulation in any respect. Plaintiff therefore filed the instant action for injunctive relief pursuant to the ADA. Plaintiff's original Complaint did not include references to her travel plans because Plaintiff believes that the law, as described below, does not require that intent is an element to his cause of action or injury. However, Plaintiff has filed an Amended Complaint to explain her travel plans to the area.

## II.    The Issue Of Intent

The issue raised by the Court is whether it is sufficient for a disabled person to review a discriminatory ORS to have suffered cognizable injury-in-fact, or whether injury requires the additional element that the plaintiff intend to book a room at the hotel or otherwise intend to visit the hotel. ("Physical nexus" or "intent to book" requirement.) For the myriad reasons set forth below, it is improper to impose any physical nexus or intent requirement.

### A.    The Majority Of Courts Have Rejected The Physical Nexus/Intent Requirement

There are two conflicting bodies of District Court opinions as to whether a physical nexus/intent to book requirement can be imposed in ORS discrimination cases.

The majority of District Courts considering the issue have rejected such a requirement. See *Laufer v. Lily Pond, LLC C Series*, 2020 U.S. Dist. Lexis 244506 (W.D. Wis. Dec. 30, 2020); *Laufer v. U.L.S.T., LLC dba Waterfront Hotel & Marina*,  2020 U.S. Dist. LEXIS 206417 (N.D.Ill. 11/4/20); *Parks v. Richard*, 2020 U.S. Dist. Lexis 86790 (M.D. Fla. 2020); *Kennedy v. Gold Sun Hospitality, LLC*, 8:18-cv-842-T-33CPT, DE 23, at pp.  30-31, (M.D. Fla. June 18, 2018); *Kennedy v. Swagath Hospitality, LLC*, 0:19-cv-60583-DPG, DE 27 (S.D. Fla. 1/2/2020); *Kennedy v. Galleon Resort Condominium Assn, Inc., et al.*, 19-cv-62421-CMA, DE 52 (S.D. Fla.

1/28/20); *Kennedy v. WGA*, 2:19-cv-0095-RWS, DE 16, p. 9 (N.D. Ga. 11/5/2019); *Poschmann v. Fountain TN, LLC*, 2019 U.S. Dist. Lexis 159417, **4-6 (M.D. Fla. 2019); *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. Lexis 87457. *8 (S.D. Fla. 2018); *Kennedy v. New Yorker Hotel, Miami, LLC*, 0:18-cv-62897-WPD, DE 34 (6/6/19); *Kennedy v. Murnane, et al.*, 0:18-cv-63086-WPD, DE 10 (S.D. Fla. 3/5/19); *Kennedy v. Italia, LLC*, 0:19-cv-61938-MGC, DE 35 (S.D. Fla. 8/10/20);; *Kennedy v. Nisha Inc.*, 2020 U.S. Dist. LEXIS 170829, *9 (M.D. Fla. 9/17/20); *Kennedy v. Nila Investments, LLC*, 2:19-cv-90-LGW-BWC, DE 34 (S.D. Ga. 7/1/20); *Kennedy v. Sai Ram Hotels, LLC*, 2019 U.S. Dist. LEXIS 80111, *4-6 (M.D. Fla. 5/13/19); *Kennedy v. Floridian Hotel, Inc.*, 2018 U.S. Dist. LEXIS 207984, at *9 (S.D. Fla. 2018). Other courts have recognized that the site of the injury is in the plaintiff's own home when they review the discriminatory ORS. *Poschmann v. Liberty Inn Motel, LLC*, 2:18-cv-14348, ECF No. 17 at 4-5 (S.D. Fla. Jan. 23, 2019); *Brooke v. Hotel Inv. Grp., Inc.*, 2017 U.S. Dist Lexis 150717, * 6 (D. Ariz. 2017); *Brooke v. Regency Inn-Downey, LLC*, 2017 U.S. Dist. Lexis 150716 (D. Ariz. 2017); *Gold Sun*, at pp. 30-31.

**B.** ***Carello* and District Court Cases Within This Circuit**

In *Carello v. Aurora Policemen Credit Union*, 930 F. 3d 830 (7th Cir. 2019), the Seventh Circuit held that a vision impaired plaintiff did not have standing to sue a closed member credit union for website discrimination. In this regard, *Carello*, 912 F.3d at 833, held that its opinion was "no broader than" the Fourth Circuit's opinion regarding another closed member credit union in *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 653-57 (4th Cir. 2019). *Griffin* specifically stated that its holding was strictly limited to instances where the plaintiff was **legally barred** from availing himself of the defendant's services and expressly disclaimed that it

was not considering "the rights generally of people with disabilities to sue for Internet-based

harms under the ADA..." *Griffin*, 912 F.3d at 652, 653 (emphasis added).

The Seventh Circuit went on to explain that the credit union cases were entirely

distinguishable from instances where a defendant failed to comply with its legal obligation to

provide the plaintiff with information (which is precisely the injury here). *Carello* expressly

recognized that where a defendant is under a legal mandate to provide information, failure to do

so gives rise to actionable injury and nothing additional is required. *Carello*, 930 F. 3d at 833. On

this point, the Court stated:

> A harm is not an informational injury simply because it has something to do with
> information. An informational injury occurs when the defendant refuses to provide the
> plaintiff with information that a law—typically, a sunshine law—entitles him to obtain
> and review for some substantive purpose. See, e.g., *Fed. Election Comm'n v. Akins*, 524
> U.S. 11, 21, 24-25 [](1998) (concluding that voters' inability to obtain information subject
> to disclosure under the Federal Election Campaign Act of 1971 is a sufficiently concrete
> injury); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 [] (1989) (explaining that,
> to satisfy Article III's injury requirement, advocacy organizations requesting information
> subject to disclosure under the Federal Advisory Committee Act need only show "that
> they sought and were denied" the information); *Casillas*, 926 F.3d at 337-38 ("[*Akins* and
> *Public Citizen*] hold that the denial of information subject to public disclosure is one of
> the intangible harms that Congress has the power to make legally cognizable." (emphasis
> omitted)). In such cases, a plaintiff "need not allege any additional harm beyond" his
> failure to receive information that the law renders subject to disclosure. *Spokeo*, 136 S.
> Ct. at 1549.

*Carello*, 930 F.3d at 835.

In *Waterfront*, 2020 U.S. Dist. Lexis 206417, one court in the Northern District Of

Illinois applied Carello, as well as Supreme Court cases in Havens Realty v. Coleman, 455 U.S.

363 (1982) and *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), in holding that Plaintiff Laufer

has standing to sue for ORS discrimination even in the absence of any intent to travel to the area

(having declined to consider her affidavit). In this regard, the Court stated:

4

> [T]the Seventh Circuit held only that an ADA plaintiff lacks standing when there is an independent legal barrier to her ability to utilize the defendant's services. What *Carello* reinforces is that absent such a legal barrier, informational and dignitary injuries *do* suffice to support Article III standing. And that is exactly what Laufer alleges here. She claims that the inadequate disclosures about Waterfront's accessibility "deprive her of the information required to make meaningful choices for travel," and that she "suffer[s] ... frustration and humiliation as the result of the discriminatory conditions present" on the hotel's booking pages. Thus, even absent a concrete plan to visit Johnsburg, Laufer has standing to bring this ADA suit.

*Waterfront*, 2020 U.S. Dist. Lexis at *12.

The *Waterfront* decision was followed by a Western District Wisconsin Court in *Lily Pond*, 2020 U.S. Dist. Lexis 244506. In *Lily Pond*, the District Court issued a show cause order substantially similar to that issued in the case at bar - requiring Laufer to explain her standing to sue. The Court's order was filed in all other cases in that District. In this regard, the *Lily Pond* court reasoned as follows:

> A lack of information may constitute an injury in fact when "the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *FEC v. Akins,* 524 U.S. 11[] (1998); *see also Public Citizen v. U. S. Dep't of Justice, 491 U.S. 440, 449 [] (1989)*. "In such cases, a plaintiff "need not allege any *additional* harm beyond" his failure to receive information that the law renders subject to disclosure." *Carello, 930. F.3d at 835* (citing *Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016))*.

*Lily Pond***,** 2020 U.S. Dist. Lexis at 244506, at *5. The Court went on to reason that *Carello* supported Plaintiff's informational injury, that Havens Realty supported a tester's right to sue for informational injury without any inquiry as to their intent. Id at. *8-12. The Court also held that her intent to evaluate places to stay for a future trip additionally provided a separate basis for finding standing. *Id*. at *12.[1]

---

[1]The *Lily Pond* Court also certified its order in favor of Plaintiff's standing for interlocutory appeal. Defendants in two other cases filed an appeal, which is presently before the Seventh Circuit, No. 21-8003.

To date, the only opinions within this Circuit are Carello, Waterfront and Lily Pond, cited above, which all support Plaintiff's standing.

### C. The Rules Of Statutory Construction Require That The Physical Nexus Requirement Cannot Be Imposed

It is paramount that the plain words of the Statute and duly promulgated Regulation govern. Several general maxims apply. "Statutory interpretation always begins with the plain language of the statute, which [the court] consider[s] in 'the specific context in which that language is used, and the broader context of the statute as a whole.'" *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 427 (2d Cir. 2009); *Jiminez v. Quarterman*, 555 U.S. 113, 118 (2009). If the language is unambiguous, no further inquiry is necessary. *Clark v. Astrue*, 602 F.3d 140, 147 (2d Cir. 2010). "Our duty is to say what statutory language means, not what it should mean, and not what it would mean if we had drafted it." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1333-34 (11th Cir. 2013), citing *T-Mobile South, LLC v. City of Milton, Ga.*, 728 F.3d 1274, 2013 WL 4750549, at \*10 (11th Cir. 2013). "We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable.". *Marod*, 733 F.3d at 1334, citing *Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 (2008)*. A court may not read words or elements into a statute that do not appear on its face, including a requirement regarding intent. See *Bates v. United States*, 522 U.S. 23, 29 (1997)(intent requirement cannot be judicially added). A court is "not allowed to add or subtract words from a statute." *Marod*, 733 F.3d at 1333-34. The Supreme Court recently reiterated these principles. See *Bostock v. Clayton Cty.*, 140 S.Ct. 1731, 1738 (2020)("If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative

6

process reserved for the people's representatives. And we would deny the people the right to continue relying on the original meaning of the law they have counted on to settle their rights and obligations."); *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019)("if judges could freely invest old statutory terms with new meanings, we would risk amending legislation outside the "single, finely wrought and exhaustively considered, procedure" the Constitution commands.").

In other words, an interpreting Court must look to the plain language of the Statute and Regulation in analyzing whether a disabled person who encounters a discriminatory ORS has a cause of action or whether they must ADDITIONALLY intend to book a room at the hotel or ADDITIONALLY encounter discriminatory conditions located at the physical premises. More significantly, if such additional restrictive language is found elsewhere in the Statute, but not in the provisions governing the case at bar, such exclusion of the restrictive language is intentional and dispositive.

> "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."

*INS v. Cardoza—Fonseca*, 480 U.S. 421, 432 (1987); see also *Patel v. McElroy*, 143 F.3d 56, 60 (2nd. Cir 1997).

Plaintiff's claims are based on the following:

42 U.S.C. Section 12188(a) provides:

> The remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter....

42 U.S.C. Section 12182(a) provides:

(a) General rule
No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. Section 12182(b)(2)(A) expands on the definitions of the above subsection to include:

[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations

42 U.S.C. Section 12182(b)(2)(A)(ii).

This latter subsection is the subject of regulations promulgated by the Department Of Justice ("DOJ").[2] Specifically, the DOJ promulgated  28 C.F.R. Section 36.302(e)(1)(hereinafter "Regulation"), which provides:

(1)Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party -
(i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
(ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs; ...

The Statute and Regulation are directly on point and unambiguously spell out all the elements of a cause of action. The plaintiff's right to injunctive relief is accorded by 42 U.S.C. Section 12188(a), which provides that: "The remedies and procedures set forth in section

---

[2]The DOJ promulgated 28 C.F.R. 36.302 to carry out the provisions of the ADA. *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. LEXIS 87457 *6 (S.D. Fla. May 23, 2018). A regulation promulgated pursuant to Congressional authority must be given controlling weight. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984).

2000a–3(a) of this title are the remedies and procedures this subchapter provides to **any person who is being subjected to discrimination** on the basis of disability in violation of this subchapter..." (Emphasis added.)  A disabled person who encounters a non-compliant ORS becomes entitled to relief under this provision pursuant to two different subsections "of this subchapter".   First, 42 U.S.C. Section 12182(a) clearly spells out a complete cause of action as follows: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the ... services ... of any place of public accommodation..."  A commercial website is a "service" of a place of public accommodation. *Haynes v. Dunkin Donuts, LLC*, 741 Fed. Appx. 752, 754 (11th Cir. 2018)(unpublished opinion)(describing a commercial website as a "service" of a place of public accommodation); *Nat'l Fed'n Of The Blind v. Target Corp.*, 452 F. Supp. 946, 953 (N.D. Cal. 2006)(same). Because a hotel's reservation  website system is a "service", all that is required is that a disabled person be deprived of full and equal enjoyment of this "service". Alternatively,42 U.S.C. Section 12182(b)(2)(A) expressly provides that "discrimination" includes a violation of 42 U.S.C. Section 12182(b)(2)(A)(ii). Because a non-compliant ORS violates this latter subsection, it is therefore "discrimination" and thus actionable to "any person" who encounters it.

The rules of statutory construction mandate a finding that a physical nexus requirement can NOT be imposed because any language expressing this requirement is conspicuously missing from the above cited Regulation and Statutory subsections. As set forth in the following cases, the imposition of substantially similar requirements have been extensively considered and rejected because they were noted to be present in other statutes or subsections, but absent from the applicable sections or subsections governing the claims before the courts reviewing them.

Indeed, there are three other subsections in 42 U.S.C. Section 12182 which contain restrictive language that is absent from the provisions that govern here. Subsection 12182(b)(1)(A) requires that a plaintiff be a client or customer of the defendant. Two of the four sub-parts of Subsection 12182(b)(2)(A) contain restrictive language. Specifically, Subsection 12182(b)(2)(A)(i) states that discrimination includes:

> the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities *from* fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations... (Emphasis added.)
> This was the subsection at issue in *Rendon v. Valleycrest Prods.*, 294 F.3d 1279 (11th Cir.

2002), which involved a telephone screening process for potential contestants on Who Wants To Be A Millionare. In that case, imposition of a physical nexus requirement was appropriate because, under the subsection, encountering a discriminatory telephone screening process was not "discrimination" until it prevented disabled persons "from" full and equal enjoyment of a good, service, etc.

> Subpart (iii) has a similar restriction. It states that discrimination includes -
> a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals *because of* the absence of auxiliary aids and services...

42 U.S.C. Section 12182(b)(2)(A)(iii) (emphasis added.) This subsection has been applied to ADA cases filed by vision impaired individuals regarding the failure of commercial websites to contain the coding necessary to make them compatible with screen reader software. See *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 904 (9th Cir.; 2018), *cert. denied*, 140 S.Ct. 122(2019)(applying this subsection to screen reader software discrimination).

The three subsections cited above all contain restrictive language from which a physical nexus or intent to visit requirement can be readily imposed. However, neither the Regulation, nor 12182(b)(2)(A)(ii), nor 12182(a), which govern the case at bar, contain any such restrictive language and, therefore, it cannot be imposed.

Both *Marod*, 733 F.3d at 1333, and *PGA Tour v. Martin*, 532 U.S. 661, 678-79 (2001) applied this rule of statutory construction in holding that because Subsection 12182(b)(1)(A) contained a "clients or customers" requirement, but the general provision set forth in Subsection 12182(a) did not contain this restriction, it must be deemed excluded.

Although not an ADA case, the Supreme Court's decision in *Bates v. United States*, 522 U.S. 23 (1997) is helpful. There, the Court analyzed whether a lower court could properly impose an intent requirement into a criminal statute and held that because such a requirement was present in a different subsection, but missing from the one at issue, that it could not be judicially imposed. *Id.* at 29-30.

Additionally, *Marod*, 733 F.3d at 1333, followed the Supreme Court decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), which also applied this principle, in holding that:

> Whereas Congress, in prohibiting discriminatory refusals to sell or rent in § 804(a) of the Act, 42 U. S. C. § 3604(a), required that there be a "bona fide offer" to rent or purchase, Congress plainly omitted any such requirement insofar as it banned discriminatory representations in § 804(d).

Accordingly, a court must apply the plain and unambiguous terms of the provisions that govern, from which any physical nexus or intent requirement is omitted. The fact that such terms are present in other subsections, but omitted from those that govern here, is dispositive of the fact that Congress meant for intent to be omitted deliberately.

**D.** *Havens Realty* **Governs**

In *Havens Realty*, the Supreme Court held that black testers had suffered injury under the

Fair Housing Act and had the right to sue for deprivation of truthful information, even though

they did not intend to rent or purchase an apartment. The Court held that:

> "As we have previously recognized, "actual or threatened injury required by Art. III may
> exist solely by virtue of 'statutes creating legal rights, the invasion of which creates
> standing . . . .'" *Warth v. Seldin*, [522 U.S. 490], 500 [(1975)], quoting *Linda R. S. v.
> Richard D.*, 410 U.S. 614, 617, n. 3 (1973). Accord, *Sierra Club v. Morton*, 405 U.S. 727,
> 732 (1972); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212 (1972) (WHITE,
> J., concurring). Section 804(d), which, in terms, establishes an enforceable right to
> **truthful information** concerning the availability of housing, is such an enactment. A
> tester who has been the object of a misrepresentation made unlawful under § 804(d) has
> suffered injury in precisely the form the statute was intended to guard against, and
> therefore has standing to maintain a claim for damages under the Act's provisions. That
> the tester may have approached the real estate agent fully expecting that he would receive
> false information, and without any intention of buying or renting a home, does not negate
> the simple fact of injury within the meaning of § 804(d). See *Pierson v. Ray*, 386 U.S.
> 547, 558   (1967); *Evers v. Dwyer*, 358 U.S. 202, 204 (1958) (per curiam).

*Havens Realty*, 455 U.S. at 373-74 (Emphasis added.) Thus, it was held that, based on the

operative statutory language, (1) testers have standing; (2) informational injury is actionable and

(3) intent is entirely irrelevant.  Under *Havens Realty*, this Court must apply the literal meaning

of the words of the statute and cannot impose a requirement of intent if those words are missing.

The three circuit courts that addressed the issue observed that the "any person" operative

language of the ADA is substantially similar to that of the statute at issue in *Havens Realty*.

*Marod*, 733 F.3d at 1332-33.; *Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust*,

867 F.3d 1093, 1101-02 (9th Cir. 2017)("exactly tracking").  In  *Colo. Cross-Disability Coalition

v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014), the Tenth Circuit also held

that this language was the same as that in Title II, thus following its prior decision in *Tandy v.*

*City of Wichita*, 380 F.3d 1277, 1286 (10th Cir. 2004). All three circuits therefore held that ADA testers have standing and their motive for encountering the discriminatory action is entirely irrelevant. The issue is strictly whether they encountered discrimination within the literal meaning of the applicable statutory language. In *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 904 (2d Cir. 1993), the Second Circuit applied this same operative "any person" language analysis in holding that testers have standing over informational injury in the context of fair housing and a discriminatory advertisement - even though the plaintiffs had no intention of doing anything with that information. This is entirely consistent with Congress' stated purpose "(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; and (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities[.]" 42 U.S.C. Section 12101. See also *Tandy*, 380 F.3d at 1287 ("Moreover, the ADA, like the FHA provisions at issue in *Havens Realty*, embodies a congressional intent to eradicate discrimination."). *See Hensley v. Eckerhart*, 461 U.S. 424, 445(1983) ("All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain."); *Bruce v. City of Gainesville*, 177 F.3d 949, 952 (11th Cir. 1999). Courts have noted: "As a result, most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled. For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007); *D'Lil v. Best Western*

13

*Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008). See also *Ragin,*, 6 F.3d at 904 (2d Cir. 1993) (acknowledging testers right to enforce private attorney general statute). The result of a private attorney general statute such as the ADA is that "[i]t is not unprecedented in this country for advocacy groups and individual members of advocacy groups to find it necessary to file a long trail of lawsuits in federal courts to enforce legal and civil rights." *Marod*, 733 F.3d at 1326.

In *Antoninetti v. Chipotle Mexican Grill, Inc.*, 614 F.3d 971 (9th Cir. 2010), *cert denied*, 2011 WL 645276 (79 USLW 3514, April 18, 2011), the Ninth Circuit held that a disabled plaintiff's history of prior litigation cannot be considered against him. In *Antoninetti*, it was found that the plaintiff had filed 20 prior actions and never returned to any of the prior establishments after settlement was reached. Nonetheless, the court held:

> Courts must tread carefully before construing a Disability Act plaintiff's history of litigation against him. As we have noted more than once, "[f]or the [Disabilities Act] to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the [Disabilities Act]." [Citations omitted].We must therefore be particularly cautious regarding credibility determinations that rely on a plaintiff's past [Disabilities Act] litigation.

614 F.3d at 980.  In *Gordon v. Virtumundo, Inc*., 575 F.3d 1040, 1069 (9th Cir. 2008)(J. Gould, Concurring), it was stated:

> Similarly, we accord standing to individuals who sue defendants that fail to provide access to the disabled in public accommodation as required by the Americans with Disabilities Act ("ADA"), even if we suspect that such plaintiffs are hunting for violations just to file lawsuits. See *Molski v. Evergreen Dynasty Corp*., 500 F.3d 1047, 1061-62 (9th Cir. 2007)("For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA.").

The Second Circuit followed *Havens Realty* with respect to the right to sue for informational injury even though the testers had no intention of doing anything with that information. *Ragin*, 6 F.3d at 904. In *Ragin*, the Second Circuit held that individuals had standing to sue under the Fair Housing Act for the defendant's placement of display advertising for residential apartments in the newspaper because all the models portrayed in the ad were white. The court noted that the plaintiff's had no intention of actually renting an apartment. *Id.*, at 904. In this regard, the Second Circuit followed *Havens Realty* and stated as follows:

> There is no significant difference between the statutorily recognized injury suffered by the tester in *Havens Realty* and the injury suffered by the Ragins and the Cuylers, who were confronted by advertisements indicating a preference based on race. [citation omitted.] Given the private attorney general provision in section 813(a) of the Act and the Supreme Court's holding in *Havens Realty*, the district court was constrained to find that the individual plaintiffs had standing to bring this action in federal court.

*Ragin*, 6 F.3d at 904. Indeed, the *Ragin* Court noted that the operative language "any person" bestowed this right.

Thus, because operative language of the ADA gives the right of relief to "any person", the imposition of an intent requirement would be in conflict with *Havens Realty*, *Ragin*, *Marod*, *Tandy*, *Hosp. Properties Trust*, and *Abercrombie & Fitch Co.*.

The Supreme Court also subsequently reiterated that deprivation of a plaintiff's right to information, when legally required, gives rise to a cause of action. . See *Federal Election Comm'n v. Akins*, 524 U. S. 11, 20-25, [] (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U. S. 440, 449, [] (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure

under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue"). See also *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)(recognizing this body of law).

Additionally, various circuit courts have likewise cited *Havens Realty* in recognizing the actionable right to information. *Muransky v. Godiva Chocolatier, Inc.*, 2020 U.S. App. LEXIS 33995 (11th. Cir. 2020)(noting that *Spokeo* and *Havens Realty* support the right to information) *Watts v. Boyd Properties*, 758 F.2d 1482, 1485 (11th Cir. 1985)(noting *Havens Realty's* holding that plaintiff had right against receiving false information); *Bensman v. United States Forest Serv.*, 408 F.3d 945, 955-57 (7th Cir. 2005)(surveying cases and statutes where informational injury is recognized and actionable); *Carter v. Welles-Bowen Realty, Inc.* 553 F.3d 979, 989 (6th Cir. 2009)(discussing informational injury); *Wilderness Soc'y v. Rey*, 622 F.3d 1251, 1258-60 (9th Cir. 2010)(discussing informational injury); *Tandy v. City of Wichita*, 380 F.3d 1277, 1290 (10th Cir. 2004)(Title II ADA tester has standing to sue for failure to provide required information); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 273-74 (3rd Cir. 2016)(recognizing intangible harm as including unlawful denial of access to information subject to disclosure); *People For The Ethical Treatment Of Animals v. United States Dep't of Agric.*, 797 F.3d 1087, 1094-95 (D.C. Cir. 2015)(plaintiff had standing to sue for being deprived information required by law); *Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 938 (D.C. Cir. 1986)(same); *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)(same); *Carello v. Aurora Policemen Credit Union*, 930 F. 3d 830, 835 (7th Cir. 2019)(recognizing informational injury).

    E.    ***Spokeo* Supports Plaintiff's Standing**

The Supreme Court's recent decision in *Spokeo* supports standing. There, the Supreme Court held that improper information which violated the Fair Credit Reporting Act did not, by itself, constitute injury, but specifically recognized the existence of statutes which provide that the dissemination of improper information constitutes an injury with nothing more required. The Court stated:

> Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified. See *Federal Election Comm'n v. Akins*, 524 U. S. 11, 20-25, [] (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U. S. 440, 449, [] (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

*Spokeo,* 136 S.Ct. at 1549-50. In the *Akins* decision referenced by *Spokeo*, the Supreme Court, in turn, referenced *Havens Realty* as follows:

> Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publically disclosed pursuant to a statute..... See also *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374[] (1982) (deprivation of information about housing availability constitutes "specific injury" permitting standing).

*Akins*, 524 U.S. at 21.  Thus, the *Spokeo* Court neither overturned nor narrowed *Havens Realty*, but instead acknowledged the body of law to which *Havens Realty* belongs.  Indeed, the concurring opinion in *Spokeo* expressly recognized *Havens Realty*. *Spokeo,* 136 S.Ct. at 1553 (Thomas J., Concurring). *Havens Realty* was also recognized in *Spokeo*'s dissent. 136 S.Ct. At 1555 (Ginsburg, J. Dissenting). In *Macy v. GC Servs., L.P.*, 897 F.3d 747, 754 (6th Cir. 2018), the Sixth Circuit noted that "[a] long line of Supreme Court precedent, cited approvingly in *Spokeo*,

supports the conclusion that *Spokeo* did not mean to disturb the Court's prior opinions recognizing that a direct violation of a specific statutory interest recognized by Congress, standing alone, may constitute a concrete injury without the need to allege any additional harm."

The Eleventh Circuit Court's recent decision in *Muransky* is also helpful. There, the Eleventh Circuit applied *Spokeo* in holding that a class of plaintiffs did not suffer cognizable injury arising from the defendant issuing credit card receipts that included too many credit card digits. The Eleventh Circuit concluded that the plaintiffs did not suffer concrete injury from the defendant's bare procedural violation. *Muransky* did not involve the violation of any statutory obligation for the defendant to provide information to the plaintiff. Rather, it involved the Fair and Accurate Transactions Act ("FACTA"), the purpose of which was "to prevent identity theft". *Id*., at *5. Critically, *Muransky* discussed the difference between a "bare procedural" right and a "substantive" right, within *Spokeo*'s context. In this regard, it states:

> *Spokeo*'s statement stands for the unremarkable proposition that, in some cases, the violation of a procedural right set out in a statute will necessarily result in the harm that Congress was trying to prevent. **A prime example is the illegal deprivation of information**: "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Akins*, 524 U.S. at 21 (citation omitted); see also *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, [] (1982) (denial of "legal right to truthful information about available housing" is an Article III injury). That, the Supreme Court has already made clear, is not a "bare" procedural violation, or one that is "divorced from any concrete harm"; if a statute protects against a lack of information, the denial of access to information is a concrete injury. For FACTA, on the other hand, a violation of the statute does not directly result in the harm Congress was trying to prevent. That is, no one's identity is stolen at the moment a receipt is printed with too many digits. See Pub. L. No. 108-159, 117 Stat. at 1952 (a goal of FACTA is "to prevent identity theft").

2020 U.S. App. LEXIS 33995, at ** 26-27 (emphasis added).

In this aspect, the *Muransky* court reached substantially the same conclusion as did the *Carello* Court, albeit from the starting point of a different statute. The *Muransky* opinion is perhaps the most critical to the case at bar because it analyzes both *Spokeo* and *Havens Realty* and specifically delineates precisely when a bare procedural violation of a statute does NOT automatically trigger injury and where a violation of a statute is substantive - with the illegal deprivation of information being the latter, which automatically triggers injury.

Nor does *Spokeo* overturn the long line of authorities which recognize tester standing under various civil rights statutes. In *Watts*, 758 F.2d at 1485-86, the Eleventh Circuit surveyed various instances where testers were granted standing for encountering discriminatory violations even when they had no intention of availing themselves of any goods, services, etc. of the respective defendants. This included *Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894 (3rd Cir. 1977), where black tester had standing over housing discrimination even though his only reason for applying was to test legality; *Evers v. Dwyer*, 358 U.S. 202 (1958), in which the Supreme Court recognized standing of black tester who sat in white section of bus solely to test legality of segregation policy and had never ridden that bus before; *Pierson v. Ray*, 386 U.S. 547 (1967), which recognized standing of clergymen whose sole purpose for going to Jackson bus terminal was to encounter discrimination and test its legality.

Reading the above-referenced cases (*Ragin*, *Spokeo*, *Muransky*, *Carello*, *Tandy*, *Akins*, *Havens Realty*, etc.) together leads to the following summary of the law. Simply because a defendant is required to provide information to somebody, and the plaintiff learns about it, does not by itself give rise to actionable injury. For example, in *Spokeo*, the defendant was NOT under any legal obligation to provide information to the plaintiff, but was instead required to provide

19

accurate information to third party creditors (of whom the plaintiff was not a class member). Nor were the *Griffin*, *Carello* or *Brintley* defendants under any legal obligation to provide information to the respective plaintiffs. However, where the defendant is legally obligated to provide information to that plaintiff, failure to do so gives rise to actionable injury and it does not matter whether the plaintiff had any intention of doing anything with that information. Nor does it matter whether the information was of a public versus a private nature. In the case at bar, the Defendant is obligated to provide certain accessibility information to the plaintiff. This therefore falls squarely within the holding of *Havens Realty* and its progeny.

It is helpful to compare and contrast ORS discrimination with other ADA cases involving vision impairment/screen reader software, as they involve completely different kinds of injury. In instances involving screen reader software discrimination, there is no promulgated regulation and, therefore, there is no legal obligation for defendants in those cases to provide any information to disabled persons. Thus, *Havens Realty* and the cases involving informational injury are entirely inapplicable to screen reader software cases. Moreover, such cases are governed by a different subsection: namely 12182(b)(2)(A)(iii)(auxiliary aids). See *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 904 (9th Cir.; 2018), *cert. denied*, 140 S.Ct. 122(2019)(applying this subsection to screen reader software discrimination). Because this subsection plainly contains a physical nexus requirement, imposition of the requirement that a plaintiff intend to visit the property is entirely consistent with that subsection's language. By contrast, because such language is omitted from the subsection governing online reservations systems, this requirement cannot be imposed. Moreover, in cases involving hotel online reservations systems, hotels are legally mandated to provide information to disabled persons, of

whom this plaintiff is a member. Therefore, this Plaintiff's encounter with Defendant's discriminatory ORS is a complete injury and nothing more is required.

## IV.    Plaintiff Intends To Visit The Area

Although it is not necessary for purposes of standing, Plaintiff does indeed intend to visit the area, as alleged in her amended complaint.

Moreover, this is entirely distinguishable from the "some day" intention referenced by the Supreme Court in *Lujon v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In *Lujon*,, the plaintiffs intended to travel to Egypt "some day", where they would presumably then witness the endangerment of the Nile Crocodile. The case at bar stands in stark contrast. As stated above, Plaintiff has a system of ensuring that he returns to the websites of every hotel he has sued. Thus, he will again encounter injury when he revisits Defendant's discriminatory ORS. ADDITIONALLY, he intends to travel to the State in August. This hardly qualifies as "some day", but is concrete and definite.

Critically, in the instant case, the Plaintiff has a system whereby she maintains and constantly updates a list of all hotels she has sued regarding their online reservations systems. This list is attached as Exhibit A. The information regarding settlements has been redacted - specifically regarding when an ORS is required to become compliant, as such information is frequently subject to confidentiality clauses entered into with the defendants. She makes sure he visits the ORS in each case shortly after the respective complaint is filed, then again when the defendant is required to bring its ORS into compliance with the law. Thus, she insures that she either will again suffer injury if the defendant does not comply with the law, or will benefit if the

defendant does indeed comply. Under *Parks*, 2020 U.S. Dist. Lexis 86790, at *7, such a system

of rechecking suffices to establish standing.

**V.    Conclusion**

For the foregoing reasons, Plaintiff has standing.

Respectfully submitted,

Attorney for Plaintiff:

  /s/ Amale Knox

Amale Knox, Esq.
**Thomas B. Bacon, P.A.**
330 Harrison St.
Pontiac, MI 48341
ph. (248) 719-1001
amale.knox.esq@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of February, 2021, a copy of the foregoing Memorandum in

Opposition to the Motion to Dismiss was filed electronically and served on all counsel of record

via the Court's CM/ECF system.

By: */s/  Amale Knox*
Attorney

22